IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 45735

| In the Interest of: JOHN DOE, A Child Under Eighteen (18) Years of Age. | ) | |
|---|---|---|
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | 2018 Unpublished Opinion No. 468 |
| | ) | Filed: May 23, 2018 |
| Petitioner-Respondent, | ) ) | Karel A. Lehrman, Clerk |
| v. | ) ) | THIS IS AN UNPUBLISHED |
| JANE DOE (2018-6), | ) ) | OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Thomas D. Kershaw, Magistrate.

Judgment terminating parental rights, affirmed.

Marilyn P. Paul, Twin Falls County Public Defender; Laura Z. O'Connell, Deputy Public Defender, Twin Falls, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Jane Doe appeals from the magistrate's judgment terminating her parental rights to her child on the grounds of neglect and best interests of the child. For the reasons set forth below, we affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Jane Doe's son was born June 16, 2016. At birth, the child tested positive for methamphetamines, amphetamines, opiates, and oxycodone. No father was present at the

1

hospital and none was named on the birth certificate.[1]  At the time Jane was homeless.  The child was removed to foster care, and Jane was charged with felony injury to child.  Jane pleaded guilty and was placed on probation.  After a shelter care hearing on June 21, 2016, the magistrate found that the child came within the jurisdiction of the Child Protective Act due to the parents' inability to provide a stable home environment, and the child was placed in the legal custody of the Department.

On May 9, 2017, the Department filed a petition to terminate Jane's parental rights on the grounds of neglect and best interests of the child.  The termination trial was held on January 30, 2018, nineteen months after the Department took legal custody of the child.  During the trial, the court heard testimony from numerous caseworkers, Jane's probation officer, her counselor, and Jane herself.

The various testimonies revealed that Jane had recently obtained a job and was living at a halfway house as she completed intensive outpatient treatment.  At the time of the trial, Jane's child had been living with a foster family since the child's birth over nineteen months earlier.  During this period of time, Jane was on probation for felony injury to child, requiring her to take regular drug tests, in addition to probation for petit theft.  At some point, Jane had been granted unsupervised visitations.  However, they were canceled because she tested positive for illegal drugs.  Of the required tests, Jane missed half and tested positive on nearly half of those she submitted to.  As a result of her positive tests, Jane received discretionary jail time during the pendency of her case plan.  In addition, she failed to appear in court on another citation, was sentenced to thirty days in jail, and served three days for a probation violation.

Due to her continued drug use, she entered inpatient drug treatment where she was discharged for noncompliance.  She then entered another program, which she successfully completed.  At the time of the trial, she was participating in an outpatient treatment program and living in a transitional group home.  She has been drug-free since entering the program-- approximately a month at the time of the trial; however, she is pregnant with another child, who had been exposed to methamphetamine in utero.  She has relapsed twice during the pendency of this case.  Jane also used methamphetamine up until two days before entering her current program.

---

[1]     The father was located and his parental rights were terminated in a consolidated case, however, only Jane appealed.

2

Jane also missed one-third of her scheduled visits with her child, resulting in a visitation agreement which Jane was required to sign. During the visits, Jane rarely brought the requested supplies for the child, though she provided a few toys, diapers, wipes, and snacks from time to time. Jane's counselor testified that it would take at least four months following outpatient treatment for Jane to be able to take care of the child. He also suggested that the child be slowly reintroduced to Jane, as it would be stressful. Though the child appeared both happy with the mother and with the foster parents, numerous witnesses testified that the child was very bonded with his foster family. Under the foster family's supervision, the child had become a happy, healthy, well-adjusted, and thriving young boy.

In a written decision, the magistrate found that Jane had not financially provided for the child, maintained stable and appropriate housing, remained drug-free for a significant period of time, completed parenting classes, or complied with the terms of her probation. The magistrate found that while Jane had made some progress on her case plan, she had not completed any requisite tasks at the time of the trial. Based on these findings and the fact that the child had been in the State's custody for over nineteen months at the time of trial, the magistrate ruled that Jane had "neglected" the child as provided in Idaho Code §§ 16-1602(31) and 16-2002(3).

In determining whether it was in the best interests of the child to terminate parental rights, the magistrate weighed the two options the child had. On one hand, the child could remain in foster care to allow Jane to have more time to complete her treatment, find appropriate housing and stable employment, and "gradually introduce her into the child's life until he was acquainted with her as his mother and comfortable in her care." On the other hand, the child could be adopted by the only family he had known or lived with since birth. After weighing the two options, the district court determined that it was in the child's best interests to terminate parental rights. Jane timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible,

3

family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

In our review, we are mindful that the finder of fact has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive, and to judge the character of the parties. *In re Doe*, 157 Idaho 765, 769, 339 P.3d 1169, 1173 (2014). In a parental-termination case, this is immensely important. *Id.* A cold record of the trial does not tell the whole story. An independent review by this Court could not take into account the trial court's superior view of the entire situation. *Id.*

ANALYSIS

## A.      Statutory Grounds

Grounds for termination of parental rights must be shown by clear and convincing evidence because each parent has a fundamental liberty interest in maintaining a relationship with his or her child. *In re Doe*, 156 Idaho 103, 110, 320 P.3d 1262, 1269 (2014). Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

### 1.      Neglect

On appeal, Jane provides no argument regarding the statutory grounds for termination; rather, she contends that termination is not in the best interests of the child. Jane essentially argues that the magistrate abused its discretion in terminating Jane's parental rights because it would not harm the child to give the mother more time to clean her life up; rather, it would be emotionally devastating to the child. The State argues that a statutory ground for termination exists because at the time of the termination hearing, the child had been in the custody of the Department for the child's entire nineteen-month life, and the mother had not complied with the case plan and thus neglect was present.

In this case, the magistrate terminated Jane's parental rights on the ground of neglect, I.C. § 16-2005(1)(b). Pursuant to I.C. § 16-1602(31), neglect occurs when a child is "without proper parental care and control, or subsistence, medical or other care or control necessary for the [child's] well-being because of the conduct or omission of his parents . . . or their neglect or refusal to provide." Additionally, neglect also occurs when the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case, and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months, and reunification has not been accomplished by the last day of the fifteenth month in which the child

has been in the temporary or legal custody of the Department. I.C. § 16-2002(3). In *Idaho Dep't of Health & Welfare v. Doe*, 149 Idaho 627, 632, 238 P.3d 724, 729 (2010), we found the statutory grounds for neglect provided in I.C. § 16-2002(3)(b) where a mother had failed to complete her case plan, the child had been in custody of the State for fifteen of the previous twenty-two months, and reunification had not been accomplished by the last day of the fifteenth month.

The various testimonies reveal that Jane did not fully comply with her case plan. Jane has been unable to secure and maintain safe, stable, and drug-free housing, as required. Though she had potential housing plans for when she completed treatment, the housing and roommates had yet to be approved by the Department. Furthermore, Jane was still residing in halfway housing at the time of the trial. Jane also admitted to relapsing on methamphetamine and last tested positive in November 2017, three months before trial. Additionally, Jane was unable to show that she could provide financial stability. Although employed at the time of the hearing, Jane's employment history had been sporadic, and she had only held her current job for roughly one week. Child support had not been regularly paid. Jane had not participated in counseling or parenting classes, as required. Jane also acknowledged at trial that she was not in a position to provide appropriate care to her child at the time. In addition, the child had been in the State's custody for his entire nineteen-month life. Last, the child was still in foster care at the time of trial, and thus reunification had not been completed within the statutory time frame. Accordingly, there was substantial and competent evidence that Jane "neglected" the child as provided in I.C. § 16-2002(3)(b).

B.      **Best Interests of the Child**

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding

that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Jane argues it would be devastating to the child if her parental rights were terminated; however, Jane provides no support for this assertion. Rather, she argues she should be given more time to comply with her case plan and become capable of being a responsible parent. The State argues that it is in the best interests of the child to provide him a permanent and stable home immediately, which Jane is unable to provide.

The record reflects that the child resided with the foster family since his birth, nineteen months prior to the hearing. During that time, Jane had two relapses. Additionally, Jane has a long history of drug abuse, starting at the age of fifteen. At trial, Jane was thirty-three years old and had three children whom were not in her custody, and she was restricted from visiting due to her substance abuse. Further, Jane has not financially supported the child, or her other three children, since she has been in treatment and is in arrears for child support. Although employed, she has yet to establish stable employment, and she has yet to find appropriate housing. Moreover, it was not until Jane found out she was pregnant with a second child, whom had been exposed to methamphetamines, that she began to take efforts to improve her situation. Jane did not have adequate housing or financial stability. Additionally, it would be quite some time before she could begin to consider providing for her child.

In *In re Doe*, 156 Idaho 103, 320 P.3d 1262 (2014), the Idaho Supreme Court upheld the trial court's termination of parental rights because the parent's plans for the future were uncertain. The Court affirmed the trial court's determination that such uncertainty was not in the child's best interests because "[t]he child deserves stability and certainty in her life, none of which her mother can provide." *Id.* at 112, 320 P.3d at 1271 (quoting *Doe v. Roe*, 133 Idaho 805, 810, 992 P.2d 1205, 1210 (1999).

The foster home is one of health and stability. The child initially had difficulty thriving at birth and was experiencing withdrawals due to its exposure to illegal drugs while in utero. He had difficulty digesting certain foods, but after switching formulas, he began to put on weight. He had early delays in big motor skill activities such as rolling over, but once the foster family had him evaluated, they began exercises to help with certain deficiencies. Since his placement in foster care, he has reached the level of a normal child his age on the growth charts and is thriving. At the trial, he was not yet walking, but the foster family assisted him in his attempts.

He was not receiving any services or required to do any special exercises. The foster home consists of twins--the natural children of the foster parents--and an adopted sibling. The child was treated just as any other child in the foster home. Additionally, the foster family meets the daily needs of the child and provides for not only his physical health, but mental and emotional health as well. Accordingly, there was substantial and competent evidence that termination was in the best interests of the child.

## IV.

## CONCLUSION

A review of the record convinces us substantial and competent evidence supported the magistrate's findings of neglect and that termination of parental rights was in the best interests of the child. Therefore, the judgment terminating Jane's parental rights is affirmed.

Chief Judge GRATTON and Judge LORELLO **CONCUR**.